IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA GILLETTE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  26 C 1455 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W.  Gettleman |
| MENARD, INC.  and CARLOS SALINAS GALLOS, | ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In January 2026, plaintiff Laura Gillette sued defendants Menard, Inc. and Carlos

Salinas-Gallo in the Circuit Court of DuPage County for injuries she allegedly sustained after

falling at a Menard store in West Chicago, Illinois.  She asserted negligence and premises

liability claims against both Menard and Salinas-Gallo, the store's manager at the time of her

fall.  Defendants then removed the case to this court under 28 U.S.C. §§ 1332(a), 1441(a), and

1446, contending that plaintiff "fraudulently" joined Salinas-Gallo to defeat federal diversity

jurisdiction.  Plaintiff now moves to remand the case back to state court under 28 U.S.C. § 1447,

arguing that Salinas-Gallo is a legitimate defendant because there is at least a reasonable

possibility that her claim against him will succeed in state court.  For the following reasons, the

court grants plaintiff's motion to remand.

## <u>BACKGROUND</u>

Plaintiff alleges in her complaint that while she was shopping at a Menard store in West

Chicago, Illinois, she slipped and fell on some liquid in one of the aisles, suffering various

injuries—including a torn labrum.  Seeking redress for her injuries, plaintiff filed a complaint in

the Circuit Court of DuPage County, asserting four counts: a claim against Menard for negligence (Count I); a claim against Menard for premises liability (Count II); a claim against Salinas-Gallo for negligence (Count III); and a claim against Salinas-Gallo for premises liability (Count IV).

According to the complaint, Salinas-Gallo was the Store Manager at the time of her fall, and both Menard and Salinas-Gallo "operated, maintained, managed, and/or controlled" the store, "including its common areas and aisles." Both defendants, the complaint further alleges, "owed a duty to provide safe floors at the Store, and to otherwise exercise reasonable care in maintaining the floors at the Store in a reasonably safe condition for" plaintiff and other customers. But they breached that duty by "permitting liquid to be left on the floor," "[f]ailing to clean up the liquid," "[f]ailing to place a caution sign indicating the floor was wet," "[f]ailing to inspect the Store so as to detect and clean up the liquid," "[f]ailing to supervise" store employees, and "[o]perating, managing and maintaining the Store in a manner that was otherwise careless and negligent."

In response, defendants filed a Notice of Removal to federal district court based on diversity jurisdiction under 28 U.S.C. § 1441(a), asserting that the federal court had diversity jurisdiction under 28 U.S.C. § 1332 because the plaintiff is a citizen of Illinois and Menard is a citizen of Wisconsin. Although defendants acknowledged that Salinas-Gallo is a citizen of Illinois—which, as explained below, would ordinarily defeat complete diversity under § 1332— they argue that the court could ignore his citizenship in analyzing jurisdiction. That is because, they assert, Salinas-Gallo was "not an active tortfeasor," and plaintiff had fraudulently joined him to avoid federal court.

2

In support, defendants submitted a declaration from Salinas-Gallo in which he states: that he "did not cause or contribute to causing any liquid to be spilled or otherwise placed on the floor of the aisle where Ms. Gillette fell"; that neither he "nor any team members at the store were made aware of liquid on the floor of the aisle where Ms. Gillette fell prior to the incident"; that he "was first made aware of Ms. Gillette's incident while [he] was working in the back of the store, nowhere near the aisle in the front of the store where the incident occurred"; and that before her fall, he "had been working in the back of the store . . . for at least two hours."

## DISCUSSION

Plaintiff moves to remand the case to state court. "When a plaintiff files suit in state court but could have invoked the original jurisdiction of the federal courts, the defendant may remove the action to federal court." Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 758 (7th Cir. 2009) (citing 28 U.S.C. § 1441(a)). Defendants here, as the parties invoking federal jurisdiction, bear the burden of establishing its existence. Id. The court must thus "resolv[e] any doubt" over federal jurisdiction "in favor of the plaintiff's choice of forum in state court." Id. If the court finds that it lacks federal jurisdiction, it must remand the case back to state court. 28 U.S.C. § 1447(c).

Plaintiff argues here that defendants cannot meet their burden to establish federal jurisdiction because Salinas-Gallo actively participated in the tort and thus was not fraudulently joined. As a result, she contends, the court should find that it lacks complete diversity to support federal jurisdiction, and should remand the case back to state court. Defendants argue in response that the court should find that Salinas-Gallo has been fraudulently joined and deny plaintiff's motion. The court thus turns to whether Salinas-Gallo was fraudulently joined.

**Fraudulent Joinder**

"Federal courts have limited jurisdiction." <u>Chan v. Target Corp.</u>, No. 24-CV-2386, 2025 WL 712586, at *2 (N.D. Ill. Mar. 5, 2025). Federal diversity jurisdiction "is one way to get into federal court." <u>Id.</u> Federal courts have diversity jurisdiction when the matter is between "citizens of different States," and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Courts interpret the citizenship requirement to mean complete diversity of citizenship—no plaintiff can have the same citizenship as any defendant. <u>Fid. & Deposit Co. of Md. v. City of Sheboygan Falls</u>, 713 F.2d 1261, 1264 (7th Cir. 1983). This complete diversity rule "fully appli[es]" to cases removed to federal court under 28 U.S.C. § 1441(a). <u>Ontiveros v. Anderson</u>, 635 F. Supp. 216, 218 (N.D. Ill. 1986).

Courts have carved out an "'exception' to the requirement of complete diversity": the "fraudulent joinder" doctrine. <u>Morris v. Nuzzo</u>, 718 F.3d 660, 666 (7th Cir. 2013) (citation omitted). The fraudulent joinder doctrine provides that a plaintiff cannot join a non-diverse defendant simply to destroy complete diversity and prevent removal. <u>Schur</u>, 577 F.3d at 763. "[T]he term 'fraudulent joinder' is a bit of a misnomer—the doctrine requires neither fraud nor joinder." <u>Id.</u> at 763 n.9. And in fact, although "[a]ctual fraud in alleging jurisdictional facts will suffice to invoke the doctrine," "the more typical ground is that a plaintiff brought a claim against a nondiverse defendant that simply has no chance of success, whatever the plaintiff's motives." <u>Id.</u> (cleaned up). But regardless which ground is at issue, the doctrine "permits a district court considering removal to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." <u>Id.</u> at 763 (cleaned up).

4

The doctrine "is difficult to establish—a defendant" bears a "heavy burden" to show "that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." Id. at 764 (cleaned up) (emphasis removed). In other words, "the district court must ask whether there is any reasonable possibility that the plaintiff could prevail against the non-diverse defendant." Id. (cleaned up); see also Salah v. Wal-Mart Stores, Inc., No. 16-1163, 2017 WL 131581, at *2 (S.D. Ill. Jan. 13, 2017) ("joinder of the claim is not 'fraudulent' . . . so long as the issue of state law is subject to reasonable argument on both sides."). The defendant's burden here (to show no reasonable possibility of success) is therefore heavier than its burden would be on a motion to dismiss under Rule 12(b)(6) (to show no plausible claim). See Chan, 2025 WL 712586, at *4.

"[T]o determine whether the plaintiff has any reasonable possibility of success," the court must "turn to state law." Schur, 577 F.3d at 764. The parties agree here that Illinois law applies to plaintiff's claims. The question, then, is whether there is a reasonable possibility that Salinas-Gallo could be found liable for negligence or premises liability under Illinois law.

In answering that question, the court "is usually limited to the factual assertions in the plaintiff's complaint at the time of removal." Beeks v. Am. Fam. Ins. Co., No. 17-CV-3265, 2018 WL 2298858, at *3 (C.D. Ill. May 21, 2018). Yet the court may in some circumstances "pierce the pleadings and consider summary judgment-type evidence such as affidavits and deposition testimony." Elrod v. Bayer Corp., No. 19 CV 06048, 2020 WL 4284416, at *2 (N.D. Ill. July 27, 2020) (cleaned up). Indeed, doing so is permissible so long as the court is "careful not to use the evidence to 'pre-try' the case." Id. (quoting Peters v. AMR Corp., No. 95 C 588, 1995 WL 358843, at *3).

5

With this framework in mind, the court turns to whether plaintiff has any reasonable possibility of success against Salinas-Gallo on either Count III (negligence) or Count IV (premises liability).

### Whether Salinas-Gallo could be Liable for Negligence (Count III)

To show liability for negligence under Illinois law, a plaintiff must "establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." Marshall v. Burger King Corp., 222 Ill. 2d 422, 430 (2006). So the "threshold issue" here (and the issue the parties focus on) is whether there is a reasonable possibility that Salinas-Gallo owed a duty to plaintiff. Forsythe v. Clark USA, Inc., 224 Ill. 2d 274, 280 (2007). "Whether a duty exists is a question of law for the court to decide." Bogenberger v. Pi Kappa Alpha Corp., Inc., 2018 IL 120951, ¶ 21.

Because the allegations against Salinas-Gallo implicate a store's employee, the court looks first to agency law. Under general agency principles, "[a] principal is subject to liability . . . when the principal owes a duty to protect a third party and an agent to whom the principal has delegated performance of the duty fails to fulfill it." Restatement (Third) Of Agency § 7.03 (2006). So Menard may owe a duty to its customers to keep its aisles hazard-free, Menard may hire managers to ensure that its duty is met, and Menard may be liable to customers when a manager breaches that duty. But under Illinois law, courts "may not impute a duty the *principal* owed to a third party to an agent merely acting pursuant to duties it, in turn, owed to the principal." Schur, 577 F.3d at 766 (emphasis in original). An agent who breaches a duty he owes solely to the principal is thus not independently liable to an injured third party. Hoidas v. Wal-Mart Stores, Inc., No. 09 C 7409, 2010 WL 1790864, at *1 (N.D. Ill. Apr. 30, 2010) (citing Bovan v. Am. Family Life Ins. Co., 897 N.E. 2d 288, 295 (Ill. App. Ct. 2008)). Rather, the agent

6

can become independently liable to a third party "when the agent breaches an independent duty that she owes to the third party." Schur, 577 F.3d at 766 (emphasis removed).

Here, then, there must be a reasonable possibility that Salians-Gallo owed an independent duty to plaintiff. The Illinois Supreme Court has made clear that the "concept of duty in negligence cases is involved, complex, and nebulous." Simpkins v. CSX Transp., Inc., 2012 IL 110662, ¶ 17. It is made even more so by "the fact that the existence of a duty is not a discoverable fact of nature but" a creature of "public policy." Id. (cleaned up).

Generally, an employee's independent "duty may be derived from tort law, from a contract between the third party and the principal when the agent is a party to the contract, from a promise made by the agent to the principal for which the third party is an intended third-party beneficiary, or from the agent's assumption of duties toward the third person that are independent of the duties the agent owes the principal." Restatement (Third) of Agency § 7.02 (2006). It may also be derived from a "special relationship"—like "custodian and ward"—which is "premised upon a relationship between the parties that is independent of the specific situation which gave rise to the harm." Simpkins, 2012 IL 110662, ¶ 20.

As for a duty derived from tort law, it is "well settled" in Illinois "that every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." Schur, 577 F.3d at 766 (citing Widlowski v. Durkee Foods, Div. of SCM Corp., 562 N.E.2d 967, 968 (Ill. 1990)). The Illinois Supreme Court has boiled this concept down to a "threshold question" in determining if a defendant owed the plaintiff a duty: "whether the defendant, by his

7

act or omission, contributed to a risk of harm to this particular plaintiff." Simpkins, 2012 IL 110662, ¶ 21.

If the answer to that question is "yes," the court then "weigh[s] . . . four factors to determine whether a duty ran from the defendant to the plaintiff: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." Id. "[T]he weight accorded each of these factors in any given analysis depends on the circumstances of the case at hand," and requires the court to consider the "policy inherent" in each factor. Id. at ¶ 18. If the answer to the threshold question is "no," the court then looks to whether one of the other ways to establish a duty—a contract, a promise, an assumption of duties, or a special relationship—exists before analyzing the four factors. See id. at ¶ 21.

While plaintiff may fail to ultimately succeed, the court finds that defendant has not met its heavy burden to show that there is no reasonable possibility that plaintiff can establish that Salinas-Gallo owed her a duty of care. As for the threshold question (whether Salinas-Gallo, by his act or omission, contributed to a risk of harm to plaintiff), plaintiff alleges that Salinas-Gallo was an active participant in the tort through omission—by, for example, failing to clean up the liquid, failing to inspect the store, and failing to place warning signs around the spill. Viewing the allegations and law in favor of plaintiff, as it must in this procedural posture, the court cannot at "this early stage" definitively find that the answer to the threshold question is "no." Chan, 2025 WL 712586, at *6 (finding that allegations that the defendant store manager "failed to monitor the conditions on the floors," "to mark the slippery floors for unwary customers," and "to correct the condition of the wet floors" supported the conclusion that the manager, who was

on duty when plaintiff slipped and fell, was an "active tortfeasor" and not fraudulently joined).[1]

See also Majewski v. Dick's Sporting Goods, Inc., No. 20-CV-6906, 2021 WL 76819, at *1 and

4-6 (N.D. Ill. Jan. 8, 2021) (finding there to be a reasonable possibility that the defendant store

manager who allegedly "fail[ed] to inspect the property for hazards" and "fail[ed] to warn that

the slippery ice posed a danger" breached a duty the manager independently owed to the

customer plaintiff).

Moving next to the four factors, as explained above, the concept of duty is "involved,

complex, and nebulous," and the four factors require careful consideration of "policy" and must

be weighed based "on the circumstances of the case at hand."  Simpkins, 2012 IL 110662, ¶¶ 17-

18.  The court again cannot hold at this stage that plaintiff has no reasonable chance of showing

that these factors establish that Salinas-Gallo owed a duty of care to plaintiff in this particular

---

[1]  Several district courts in the Seventh Circuit that have analyzed whether a store employee can
be liable in slip-and-fall-like situations have done so using an "active tortfeasor" framework.
See Chan, 2025 WL 712586, at *5 ("Under Illinois law, an employee is liable only to the extent
that she is an active tortfeasor." (cleaned up)).  The term has been given varying definitions.
See, e.g., id. ("An employee is an active tortfeasor if she caused the incident or actively
contributed to the act which caused the incident." (cleaned up)); Pryor v. Walmart Inc., No. 3:24-
CV-1883-DWD, 2024 WL 4542712, at *2 (S.D. Ill. Oct. 22, 2024) ("an employee . . . may be
personally liable for a customer's injuries if he . . . was an active tortfeasor and not simply a
manager, i.e., if he . . . owed a duty to the customer that was independent of the duty owed to the
employer and the employee caused the incident or actively contributed to the act which caused
the incident." (cleaned up)); Salah, 2017 WL 131581, at *4 ("Illinois law permits a store
manager to be personally liable for a customer's injuries if the agent is an active tortfeasor—i.e.,
the agent owed a duty to the customer that was independent of the duty the agent owed to the
employer.").  The term's proliferation appears to have its roots in Fountain v. J.C. Penney Corp.,
No. 06-CV-680-DRH, 2007 WL 1308813, at *3 (S.D. Ill. May 3, 2007), where the court
borrowed the phrase from a 1956 Illinois Appellate court case, stating that, in Illinois, an
"employee can be found liable as the 'active tort-feasor [who] committed the act which caused
the injury.'"  (Quoting Laver v. Kingston, 11 Ill. App. 2d 323, 327 (3d Dist. 1956)).  This court
finds that instead of imparting dispositive meaning to the term "active tortfeasor," the better
approach is to follow Simpkins, applying its "threshold question"—which seems to align with
the "active tortfeasor" framework, anyway—and then its four-factor test, which this court turns
to next.

case.  Cf. Salah, 2017 WL 131581, at *2 (explaining that if an "intricate analysis of state law is needed to dismiss" the claim, "the claim may not be disregarded for purposes of diversity jurisdiction" (cleaned up)).  Indeed, this is simply not a case where, for example, the manager in question was not even on duty when the accident occurred, and so could not reasonably have owed an independent duty to plaintiff under tort law.  See Chan, 2025 WL 712586, at *6 ("Sometimes courts have found fraudulent joinder when the manager in question wasn't on duty that day." (collecting cases)).

In short, the court finds that defendants have not met the "heavy burden" to show that there is no reasonable possibility that plaintiff can succeed in state court on her negligence claim against Salinas-Gallo—that is, that there is no reasonable possibility that plaintiff can establish that Salinas-Gallo owed her a duty of care, breached that duty, and was the proximate cause of her injuries.  Schur, 577 F.3d at 764.  Because the court finds that defendants have failed to show that there is no reasonable possibility of success on at least her negligence claim against Salinas-Gallo, the court finds that Salinas-Gallo was not fraudulently joined and that the court cannot disregard him for jurisdictional purposes.

**CONCLUSION**

For the above reasons, the court grants plaintiff's motion to remand the case to state court [10]. The case is thus remanded to the Circuit Court of DuPage County forthwith.

So ordered.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:   July 31, 2026**

11